UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JANICE GEORGE-MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-0027 CAN |
| | ) | |
| SOCIAL SECURITY ADMIN., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER AND OPINION**

On January 10, 2006, Plaintiff Janice George Miller (Miller) filed her complaint in this Court.  On May 12, 2006, Miller filed an opening brief and requested this Court to enter judgment in her favor or to remand this matter to the Commissioner of Social Security.  On July 26, 2006, Defendant Commissioner of Social Security (SSA) filed its response brief.  On August 15, 2006, Miller filed a reply brief.  On November 14, 2006, this case was reassigned to the undersigned Magistrate Judge pursuant to the consent of the parties.

**I.   PROCEDURAL BACKGROUND**

On December 12, 2002, Miller filed an application for Supplemental Security Income under Title II of the Social Security Act.  (Tr. 48-50); See 42 U.S.C. §§ 416(I), 423, 1382c(a)(3)(A).  Miller alleged a disability onset date of December 12, 2002.[1]  Miller's claim was denied initially and upon reconsideration.  (Tr. 36, 41.)  Miller filed a request for a hearing before an Administrative Law Judge (ALJ), which was granted.  (Tr. 19-24.)  On February 24,

---

[1] Miller initially claimed a disability onset date of January 1, 1993.  (Tr. 43).  However, at the hearing, Miller amended the onset date to December 12, 2002, the date of her SSI application.  (Tr. 261).

2005, Miller appeared and testified at the hearing. (Tr. 243.) On August 12, 2005, the ALJ denied Miller's claim. (Tr. 11-18.)

The ALJ found that Miller had not engaged in substantial gainful activity since the alleged onset of disability.[2] (Tr. 17.) He also found that Miller suffered from a combination of impairments including: insulin-dependent diabetes, hypertension, GERD, status-post laparoscopic cholecystectomy, degenerative disc disease of the lumbosacral spine, hyperlipidemia, major depressive disorder, and heart problems. (Id.) The ALJ found that Miller's impairments were collectively severe based on the requirements of 20 C.F.R. § 416.920(b). (Id.) However, after the ALJ made a residual functional capacity ("RFC") determination, he found that Miller could perform medium work, which included her past work as a CNA and a packer. (Tr. 11-18.)

Miller appealed the ALJ's decision to the Appeals Council, which denied review. (Tr. 3.) Consequently, the ALJ's decision became the Commissioner's final decision. See (Id.); 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). On January 10, 2006, Miller filed a complaint in this Court seeking review of the ALJ's decision. This Court may enter an order and opinion in this matter based on the parties' consent, 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

---

[2] In the body of the ALJ's opinion, he finds that Miller has not engaged in substantial gainful activity (SGA) at any time since her alleged disability onset date. (Tr. 12.) However, the ALJ also issued a numeric listing of his findings. (Tr. 17.) Item one on the numeric list states that the "claimant has engaged in work that qualifies" as SGA since the alleged disability onset date. (Id.) Because the ALJ engaged in the sequential five step test for determining whether a claimant is disabled, this Court assumes that the discrepancy is the result of a typographical error and the ALJ in fact concluded that Miller *had not* engaged in SGA since the alleged disability onset date.

**II.     ANALYSIS**

   A.     <u>Facts</u>

At the time the Appeals Council declined to review the ALJ's decision, Miller was fifty-six years old and had an 11th grade education.  Miller last worked in 1991 as a certified nurse's assistant ("CNA").  (Tr. 12.)  Prior to that, she was employed as a packer.  (<u>Id</u>.)  Miller testified that she stopped working because she was disabled.  (Tr. 46.)

Miller has a history of poorly controlled high blood pressure and diabetes, high cholesterol levels, gall bladder disease, depression, GERD, obesity, heart problems, and low back pain.  She had gallbladder surgery in 1999 and a stroke in 2004.  At the hearing and in reports to the agency, Miller represented that she spends up to twenty hours a day in bed because of the pain she experiences from her illness and the side effects of her medication.  (Tr. 247.)  She stated that she occasionally reads the newspaper or watches television. (Tr. 251.)  She is able to grocery shop and can drive herself to the store.  (Tr. 252.)   Miller testified that she enjoys decorating and going to garage sales.  (Tr. 253.)  However, she is unable to walk for more than a couple of blocks because standing on her feet for long periods causes pain.  (<u>Id</u>.)  Additionally, her need to urinate frequently makes it difficult for her to engage in these activities.  (<u>Id</u>.)  Miller testified that she avoids outings because of her depression and stated that being around large groups of people causes her to have panic attacks.  (<u>Id</u>.)  Miller saw many doctors and underwent numerous tests and procedures to assist her with her mental and physical health problems.

   1.     <u>Dr. Leininger</u>

On January 21, 2003, Miller began receiving treatment at the Clinic from Dr. Leininger ("Leininger").  (Tr. 174.)  Leininger treated Miller regularly until May 2003.  At her initial visit,

Leininger noted that Miller had a history of diabetes, severe hypertension, aortic insufficiency, and hyperlipidemia and was taking a variety of medications for these conditions.[3]  (Tr. 174.)  Miller complained of mild shortness of breath and indicated that she occasionally woke up short of breath at night.  (Id.)  Leininger's diagnosis included: poorly controlled diabetes and hypertension, hyperlipidemia, gastroesophageal reflux disease, menopausal syndrome, and depression.  (Id.)  Additionally, Leininger noted that Miller was "overweight but otherwise in no distress."  (Tr. 174.)  Throughout the course of her treatment, Miller's hypertension and diabetes were poorly controlled and Leininger adjusted her medication accordingly. (Tr. 168-177.)  During her follow up visit in April,  Miller reported " no side effects of the medications" and Leininger noted that "[s]he is really feeling pretty well at this point."  (Tr. 169.)  The only time Miller reported pain was in May, when she indicated she had soreness in her right shoulder.  (Tr. 168.)

On July 18, 2003, Leininger wrote a letter to Miller's attorney, Robert Rosenfeld ("Rosenfeld"), in support of her application for SSI.  Leininger opined that Miller was "permanently disabled" and he could not foresee "any time in the future that she would be able to do full time light duty work."  (Tr. 167.)

Miller resumed treatment with Leininger on September 9, 2003 after spending three months in Nashville, TN visiting family.  She reported that she had not taken all of her medications with her and had not been checking her sugars.  In addition, she informed Leininger that she had an episode of weakness in her right leg, back pain, pain and weakness in her right

---

[3]  Specifically her medications included Prinivil, Lantus insulin, ibuprofen, Cardizen, Clonidine, Premarin/Provera, Protonix, Glucophage XR, furosemide, Amitriptyline, Lipitor, Avandia, hydralazine, atenolol, Klor-Con, and Glucotrol XL.

arm, and moderately severe back pain which seemed to have resolved itself. She also reported some polyuria and weight loss. (Tr. 195.) Leininger's diagnosis included: poorly controlled hypertension and diabetes, poor compliance with medication, hyperlipidemia, candida vaginitis, and aortic insufficiency. (Tr. 196.) Miller saw Leininger again in October for a follow up appointment. (Tr. 194.) She subsequently switched to Medicaid Select insurance and selected a new primary care physician. (Id.)

    2. Dr. Charlot

On February 22, 2003, Dr. Joseph Charlot ("Charlot") saw Miller at the request of the agency. (Tr. 112-115.) Miller reported polyuria, general weakness, irregular heart beat, chest pain, intermittent headaches, low-back pain, dizziness, nausea, drowsiness, chest pain, cough and shortness of breath which she in part related to side effects from her medication. (Tr. 112.) Charlot concluded that Miller suffered from diabetes, chronic back pain and had a limited range of motion and forward flexion and extension of the lumbar. (Tr. 114.)

    3. Dr. Wax

On February 25, 2003, Miller saw Dr. Alan Wax ("Wax") for a consultative psychological exam. (Tr. 116-119.) Miller reported that she had been depressed for ten years and had been taking anti-depressant medication for three years. (Tr. 116.) She also informed Wax that she was disabled due to the "silent killing diseases" which she defined as "diabetes, high blood pressure, and heart problems." (Id.) Wax observed that "her mood and affect were somewhat flat and depressed" but she did not "cry or evince any other major symptoms of depression or anxiety." (Tr. 117.) Wax concluded that her cognitive functioning appeared to be in the low average range with corresponding memory, tension, communication, and focusing.

5

(Tr. 118.)  Wax's diagnosis included: major depressive disorder, recurrent, severe, without psychotic features, diabetes, high blood pressure, heart problems, and occupational difficulty. Wax estimated Miller had a GAF of 58.

   4. <u>Dr. Bastnagel</u>

 On March 31, 2003, Dr. Bastnagel ("Bastnagel") conducted a physical RFC assessment. (Tr. 124-131.)  After reviewing Miller's test results and other evidence in the record, Bastnagel concluded that Miller could lift fifty pounds occasionally and 25 pounds frequently; sit and stand and/or walk about 6 hours in an 8 hour workday; climb occasionally; and frequently balance, stoop, kneel, crouch, and crawl.  (Tr. 125-126.)

   5. <u>Dr. Shipley</u>

 On March 31, 2003, Dr. Shipley, Psy.D. ("Shipley"), performed a psychiatric review technique on behalf of the agency.  (Tr. 132-145.)  Shipley found that Miller did not have a severe mental impairment although he concluded that she had a mood disturbance accompanied by full or partial manic or depressive syndrome.  (Tr. 135.)  Shipley opined that Miller had mild restrictions on daily living and maintaining social functioning and no difficulty maintaining concentration, persistence, or pace.  (Tr. 142.)  In July 2003, J. Evans, Ph.D./JDE, reviewed the file on behalf of the agency and concurred with Shipley's evaluation.  (Tr. 144.)

  B. <u>Standard of review</u>

 The standard of judicial review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  <u>See</u> 42 U.S.C. § 405(g); <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005); <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005); <u>Golembiewski v. Barnhardt</u>, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1972). An ALJ must articulate, at a minimal level, an analysis of the evidence and build an accurate and logical bridge from that evidence to his conclusion. See Haynes, 416 F.3d at 626. To determine if substantial evidence exists to support an ALJ's determination of benefits eligibility, a reviewing court reviews the record as a whole but does not substitute the court's judgment for that of the ALJ by reweighing facts or witness credibility. Id. An ALJ's decision is reviewed *de novo* and it cannot stand if it lacks evidentiary support or adequate discussion of the issues. See Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

    C.    Fuller's request for reversal or remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Miller must establish that she is "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines disability as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted longer or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423 (d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments; 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; 4) the claimant's residual functional capacity leaves him unable to perform her past relevant work; and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. A finding of disability or non-disability

at any step ends the analysis.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the ALJ reaches an affirmative conclusion at step three or step five, then the claimant is disabled.  See Briscoe, 425 F.3d at 351.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not listed in the regulations, the ALJ assesses the claimant's RFC to determine whether the claimant can perform her past work under step four or whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  (Id.)

The ALJ evaluated the facts and evidence in Miller's file in accordance with the sequential analysis proscribed by the agency.  At step one, the ALJ found that Miller had not engaged in substantial gainful activity since her alleged disability onset date.  (Tr. 12.)  At steps two and three, the ALJ found that Miller's  impairments were collectively severe but did not meet or equal a listing in the regulations.  (Id.)  The ALJ found Miller's testimony "not fully credible, [because it was]. . . inconsistent with the objective medical evidence in the record, her medical treatment history, and her normal daily activities."  (Tr. 15.)  He also gave reduced weight to the opinions of Dr. Leininger and Dr. Wax because he concluded that the opinions were not supported by the objective medical evidence in the record.  (Tr. 15-16.)  Consequently, at step four, the ALJ concluded that Miller was not disabled and could perform a range of medium work, including her past relevant work as a CNA and a packer.  (Tr. 16.)

Miller makes three challenges to the ALJ's findings.  First, Miller argues that the ALJ improperly gave reduced weight to the opinions of Dr. Leininger and Dr. Wax.  Next, Miller

argues that the ALJ erroneously evaluated her credibility.  Finally, Miller argues that the ALJ improperly evaluated her past relevant work and committed legal error by failing to make findings on the physical and mental demands of her past occupations.

> 1.    The ALJ's decision to give reduced weight to Dr. Leininger's opinions is not supported by substantial evidence.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  See Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006).  More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances.  See 20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000).  However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled.  See Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).  Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record.  See Clifford, 227 F.3d at 870.  When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one additional piece of evidence for the ALJ to weigh.  See Hofslien, 439 F.3d at 377.  Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and the reviewing court must engage in a case by case determination depending on the circumstances.  Id.

The ALJ acknowledged that Leininger "did have the opportunity to treat the claimant over a long period of time," however, he declined to assign Leininger's opinion controlling weight because he concluded that it was " not at all supported by the objective medical evidence

9

of record, nor is it accompanied by objective medical findings or a coherent rationale." (Tr. 15.) An ALJ must articulate, at a minimal level, an analysis of the evidence and build an accurate and logical bridge from that evidence to his conclusion. See Haynes, 416 F.3d at 626. An ALJ's general statement of his findings is insufficient. In this case, the ALJ failed to engage in the requisite minimal analysis. He did not cite to specific medical evidence or examples in the record to support his reasoning. It may well be, as the government contends, that the ALJ only rejected Leininger's legal conclusion that Miller was disabled. See (Def. Br. At 13). However, this Court's analysis is limited to information in the record. Consequently, this court is left to speculate as to specifically why the ALJ perceived Leininger's opinions to be deficient. Failure to engage in the requisite analysis is sufficient to warrant a remand.

The ALJ could have discounted Leininger's opinion if he determined that it was internally inconsistent and explained the basis for his conclusion. However, the ALJ did not make or explain such a finding. Alternatively, the ALJ may have discounted Leininger's opinion because he determined it was inconsistent with other evidence in the record. This Court, at best, can infer the ALJ was stating that Leininger's opinion was inconsistent with Bastnagel's opinion. However, this conclusion would not withstand further scrutiny. Not only did the ALJ fail to articulate that this was his reasoning, but also, a contradictory opinion of a non-examining physician does not, by itself suffice to reject an examining physician's opinion. See Gudgel v. Barnhart, 345 F.3d 467, 470 (2003).

It is axiomatic that the ALJ decision cannot stand if it lacks an adequate discussion of the issues. See Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ is required to discuss the evidence in the record and to build a logical bridge from that evidence to his

conclusion. As noted, the ALJ failed to articulate his analysis, and thus, this Court is unable to follow the ALJ's reasoning and conclusion to determine if they are reasonable. Consequently, the ALJ's decision not to afford Leininger's opinions controlling weight is not supported by substantial evidence. On remand, the ALJ must sufficiently explain why he discounted Leininger's opinions and his analysis must be supported by substantial evidence in the record.

        2.      <u>The ALJ's decision to give reduced weight to the opinion of Dr. Wax is supported by substantial evidence</u>.

An ALJ is entitled to reject a non-treating physician's opinion in favor of other physicians' opinions in the record. See <u>Haynes</u> 416 at 631. Without evidence that a physician has a longitudinal perspective, an ALJ has no reason to afford that physician's opinion greater weight. See <u>Scheck v. Barnhart</u>, 357 F.3d 697, 702-703 (7th Cir. 2004). "[I]f conflicting medical evidence is present, the [ALJ] has the responsibility of resolving the conflict. <u>Diaz v. Chater</u>, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

Miller alleges that the ALJ erred in affording Wax's opinion reduced weight. However, this argument is without merit. Wax was not Miller's treating physician. In fact, he saw her only once, and his opinion constitutes only four pages in an administrative record of over 250 pages. Without evidence that Wax's opinion reflects a longitudinal perspective unavailable from other sources, the ALJ had no reason to afford Wax's opinion controlling weight. See <u>Schneck</u> 356 F.3d at 702-03. Because Wax's opinion is merely another piece of evidence, the ALJ was entitled to reject Wax's opinion and this Court will not re-weigh evidence as Miller requests. Although this Court has already determined the ALJ's decision to be deficient in other regards,

the ALJ's decision not to give Wax's opinion controlling weight was supported by substantial evidence.

        3.     <u>The ALJ's adverse credibility determination is not patently wrong</u>.

An ALJ is in the best position to hear, see, and assess witnesses and his determinations are given special deference. See <u>Jens v. Barnhart</u>, 347 F.3d 936, 942 (7th Cir. 2003). As a result, this Court will not overturn his credibility determinations unless they are patently wrong. <u>Id</u>. Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. See <u>Golembiewski</u>, 322 F.3d at 915; <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915. Nor may the ALJ simply recite the factors that are described in the regulations for evaluating symptoms. See <u>Zurawski v. Halter</u>, 245 F.3d 881, 881 (7th Cir. 2001). The ALJ must consider any inconsistencies in the record and whether the claimant's testimony conflicts with the rest of the evidence. 20 C.F.R. § 404.1529(c)(4). However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (quoting <u>Diaz</u>, 55 F.3d at 308.

In the present case, the ALJ gave a sufficiently detailed analysis of his credibility determination. The ALJ concluded that Miller's "allegations that she can perform no sustained work activity because of diabetes mellitus, depression, hypertension, hyperlipidemia, back pain and heart problems are not fully credible" and "inconsistent with the objective medical evidence of record, medical treatment history and her normal daily activities." (Tr. 15). The ALJ further noted that although Miller's illnesses likely cause symptoms, these symptoms have not required surgical intervention, hospitalization, have not interfered with her ability to perform household

duties and personal care, or engage in hobbies.  (Id.)  Further, the ALJ noted that her testimony is inconsistent with Charlot's physical assessment as well as previous test results and "demonstrates her willingness to exaggerate her symptoms and limitations."  (Id.)

Although, there may be evidence in the record to support Miller's allegation that the ALJ's credibility determination was deficient in some regards, Miller has simply failed to demonstrate that it was patently wrong.   For example, this Court notes that the ALJ emphasized Miller's ability to groom herself, conduct personal errands, and perform household chores.  Indeed, the Seventh Circuit has cautioned that it is improper for an ALJ to casually equate household work to work in the labor market.  See Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005).  However, this warning does not mean that Miller's daily activities are irrelevant.  The ALJ explained that Miller's professed physical symptoms differed from the examination findings detailed by Charlot, and he based his adverse credibility determination on this basis.  (Tr. at 15.)  Thus, by citing specific examples in the record and articulating the reasoning for his conclusion, the ALJ's analysis as it pertains to Miller's credibility is sufficient.  This Court will not re-weigh evidence or substitute its judgment for the ALJ's.  See Haynes 416 F.3d at 626.  Although Miller has shown that it is possible to draw two inconsistent conclusions from the same evidence, she has simply failed to demonstrate that the ALJ's credibility determination was patently wrong.

Next, Miller argues that the ALJ committed reversible legal error by failing to consider the combined effect of all of her impairments and the effect of her obesity on those impairments.  An ALJ does not err in omitting to mention the applicant's obesity where it has presumably factored into his analysis and it is mentioned specifically in the claimant's medical history.  See Skarbek v.Barnhart , 390 F.3d 500, 504 (7th Cir. 2004).  In this case, Miller failed to offer any

13

evidence that her obesity or depression further limited her ability to work or complicated her medical conditions. Additionally, obesity is neither a disability or an impairment.  See Gentle, 383 U.S. at 607. It can be the cause of a disability but "once its causal efficacy is determined, it drops out of the picture." Id.  In this case, Miller does not allege that she is so obese that her movement is restricted as a result.   Further, Miller has been obese throughout her medical treatment, and her obesity has been remarked upon by all of her examining physicians.  For these reasons, and because the ALJ specifically mentioned her history of obesity and depression in the body of his opinion, it is entirely reasonable to assume he properly considered her impairments in combination and the effect of her obesity on those impairments.

In sum, the record provides adequate support for the ALJ's credibility finding and Miller has failed to demonstrate that the ALJ's conclusion in this regard is patently wrong.   Thus, this Court concludes that the ALJ's credibility determination was supported by substantial evidence.

### 4. Miller's Past Relevant Work

 For a claimant's previous occupation to be considered past relevant work, it must have been "substantial gainful activity" or "SGA."  SGA is work that the claimant has done long enough to have learned it, and the job must have been performed within the past 15 years.  See 20 C.F.R. § 416.960(b)(1).  Miller contends that the ALJ improperly considered past relevant work that did not meet the SGA requirements and committed legal error by failing to make findings on the physical and mental demands of her past occupations.   Miller notes that the that written and testimonial evidence she contributed to the record is inconsistent with regard to the time period she performed her work as a packer and a CNA and her earnings at those occupations.   The thrust of Miller's argument is that the ALJ erred in relying on her testimony

14

given its inconsistency with other information in the record.   As previously noted, the ALJ is in the best position to weigh evidence, hear testimony and make judgments accordingly.   See Haynes, 416 F.3d at 626.  To the extent that the record is inconsistent, it is not unreasonable for the ALJ to rely on Miller's testimony.   Miller is responsible for providing the Commissioner with accurate and reliable information.  It is entirely reasonable, and is in fact necessary, for the ALJ to rely on that information in reaching his conclusions.  Thus, the ALJ's conclusions with regard to Miller's past relevant work are supported by substantial evidence.[4]

### III.   CONCLUSION

This court cannot determine whether the ALJ's failure to afford controlling weight to Miller's treating physician, Leininger, was supported by substantial evidence.   As a result, this Court **ORDERS** that this case be **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).  The clerk is instructed to term the case.

**SO ORDERED**.

Dated this 26th Day of March, 2007.

S/Christopher A. Nuectherlein<br>Christopher A. Nuechterlein<br>United States Magistrate Judge

---

[4] This court notes that Miller's failure to provide accurate and consistent information to the Commissioner provides support for the ALJ's adverse credibility finding.  Additionally, Miller's point regarding her past relevant work is essentially moot as this Court has already determined that the ALJ's decision not to afford her treating physician controlling weight is not supported by substantial evidence.